IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| KESHA D. BOSWELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 08-G-2351-E |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

**MEMORANDUM OPINION**

The plaintiff, Kesha D. Boswell, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security benefits.  Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner.  Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

**STANDARD OF REVIEW**

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied.  <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983).  To that end this court "must scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled. The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)-(f). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;
(2) whether she has a severe impairment;
(3) whether her impairment meets or equals one listed by the Secretary;
(4) whether the claimant can perform her past work; and

>   (5)   whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job."  Pope at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers.  Id.

In the instant case,  ALJ Robert G. Faircloth determined the plaintiff met the first two tests, but concluded that while the plaintiff's affective mood disorder with anxiety is "severe," it did not meet or medically equal a listed impairment.  [R. 18].  The ALJ found the plaintiff capable of performing her past relevant work as a housecleaner. [R 21].

## LISTING 12.04, AFFECTIVE DISORDERS

### The "A" Criteria

Listing 12.04 concerns mental disorders that are "[c]haracterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome." The listing requires that a claimant meet a two part test.  The first part (the "A" criteria of the listing) requires "[m]edically documented persistence, either continuous or intermittent, of one of the following:

1.  Depressive syndrome characterized by at least four of the following:

    a.  Anhedonia or pervasive loss of interest in almost all activities; or

    b.  Appetite disturbance with change in weight; or

    c.  Sleep disturbance; or

    d.  Psychomotor agitation or retardation;

    e.  Decreased energy; or

    f.  Feelings of guilt or worthlessness; or

    g.  Difficulty concentrating or thinking; or

    h.  Thoughts of suicide; or

    I.  Hallucinations, delusions, or paranoid thinking.

### The "B" Criteria

Listing 12.04 requires in addition to establishing the presence of an affective disorder, that the disorder results in functional limitations as set forth in 12.04(B) (the "B" criteria of the listing). In order to satisfy the "B" criteria, a claimant must demonstrate that his disorder results in at least two of the following:

1.  Marked[1] restriction of activities of daily living; or

2.  Marked difficulties in maintaining social functioning; or

---

[1] For the purposes of the mental disorder listings, "marked" means "more than moderate but less than extreme." Furthermore, a "marked limitation may arise when several activities or functions are impaired or even when only one is impaired, so long as the degree of limitation is such as to seriously interfere with the ability to function independently, appropriately and effectively." 20 C.F.R. pt. 404, Subpt. P, Appendix 1, § 12.00.

  3.  Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or

  4.  Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors).

### THE STANDARD FOR REJECTING
### THE TESTIMONY OF A TREATING PHYSICIAN

As the Sixth Circuit has noted: "It is firmly established that the medical opinion of a treating physician must be accorded greater weight than those of physicians employed by the government to defend against a disability claim." Hall v. Bowen, 837 F.2d 272, 276 (6th Cir. 1988). "The testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary." McGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); accord Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th Cir. 1991). In addition, the Commissioner "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight ...." McGregor, 786 F.2d at 1053. If the Commissioner ignores or fails to properly refute a treating physician's testimony, as a matter of law that testimony must be accepted as true. McGregor, 786 F.2d at 1053; Elam, 921 F.2d at 1216. The Commissioner's reasons for refusing to credit a claimant's treating physician must be supported by substantial evidence. See McGregor, 786 F.2d at 1054; cf. Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987)(articulation of reasons for not crediting a claimant's subjective pain testimony must be supported by substantial evidence).

## WHEN ADDITIONAL EVIDENCE IS SUBMITTED
## TO THE APPEALS COUNCIL

Claimants are permitted to submit new evidence at each step of the review process, 20 C.F.R. § 404.900(b)("In each step of the review process, you may present any information you feel is helpful to your case. [W]e will consider at each step of the review process any information you present as well as all the information in our records."). The Appeals Council is required to consider the entire record, "including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 404.970(b); Keeton v. Department of Health and Human Services, 21 F.3d 1064, 1066 (11th Cir. 1994).

To be material the proffered evidence must be "relevant and probative so that there is a reasonable possibility that it would change the administrative result." Caulder, at 877. A review of the evidence submitted to the Appeals Council demonstrates that it meets all of the requirements of the regulations for consideration by the Appeals Council. Because the Appeals Council actually considered the evidence, the court will only review whether the Appeals Council committed reversible error in refusing to review the plaintiff's case in light of that evidence. The Regulations require the Appeals council to "review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. § 404.970(b).

Moreover, a "district court must consider evidence not submitted to the administrative law judge but considered by the Appeals Council when the court reviews the Commissioner's final decision denying Social Security benefits." Ingram v. Astrue, 496 F.3d 1253, 1258 (11th Cir. 2007).  "[W]hen a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." Ingram at 1262.

> In Bowen v. Heckler, the claimant filed evidence in the Appeals Council, which considered the evidence but denied review.  748 F.2d 629 (11th Cir. 1984).  We held that "the Appeals Council did not adequately evaluate the additional evidence" and, citing earlier precedents, reasoned that "[w]e have previously been unable to hold that the Secretary's findings were supported by substantial evidence under circumstances such as these." Id. at 634. . . . After quoting sentence four of section 405(g) in full and discussing it at length, we concluded that a reversal of the final decision of the Commissioner was appropriate.  We held that "the Appeals Council should have awarded Bowen disability insurance benefits," and we remanded to the district court "for entry of an order . . . that such an award be made." Id. at 637.

Ingram at 1263.

### DISCUSSION

The plaintiff claims she has been disabled since February 1, 2004, because of headaches, tremors in her hands, depression and anxiety.  [R. 81-82].  The ALJ summarized the plaintiff's testimony:

> . . . she suffers from migraine headaches and tremors in her hands and feet.  She said that her hands will "draw up" and the pain and restriction will last about one hour.  She said her feet will do the same thing.  She said that she can not cook or do anything because of her nerves.  She said that her migraine headaches occur about every other day and last all day.  She said

> that she has panic attacks. She said that she has not tried work since the
> 1980's. She said that she also has hallucinations.

[R. 19]. At the ALJ hearing, the plaintiff's mother testified as a lay witness. The ALJ summarized her testimony:

> . . . the claimant lives in a trailer behind her house. She said that she does not believe the claimant can work as she has to take care of her like a child. She said that she and her daughter do not get along well and the claimant does not get along with people as well. She said the claimant has bad and frequent mood swings.

[Id.].

On February 18, 2005, the plaintiff was evaluated by Amir Torabi, M.D., a neurologist. [R. 132-134]. His impression of the plaintiff was:

> Young woman with multiple problems including imbalance, proprioception abnormalities, cognitive problem and also depression. She also has a family history of gait difficulty and ataxia. The combination of the above mentioned findings may suggest autosomal dominant process of spinocerebellar atrophy or DRPLA (dentatorubral pallido lysian atrophy). However a structural lesion should be ruled out as well. In addition, she has postural tremor that is likely a separate process that also is familial as essential tremor that also her mother has [sic].

[R. 134]. On October 4, 2005, Dr. Torabi opined that the plaintiff had "severe depression and anxiety." [R. 129]. On October 18, 2005, Dr. Torabi said that she was doing "a little better today with Xanax." [R. 128]. However, his diagnosis was "chronic pain, tension headache and migraine headaches; also depression and anxiety attacks." [Id.]. His plan was to refer her to a psychiatrist. [Id.].

On November 10, 2006, the plaintiff was seen by James H. Halsey, M.D., a neurologist at the UAB School of Medicine, at the request of her treating physician,

8

Dorothy Nelder, M.D., for headaches. [R. 214-215]. Although an MRI of the brain was normal, Dr. Halsey opined that her "[h]eadache pattern and quality is typical of migraine, in chronic daily phase." [R. 215]. His plan was to increase the plaintiff's Topamax to the maximum tolerable by her. [Id.]. At a March 3, 2008, examination by Dr. Halsey, the plaintiff exhibited a "pronounced postural tremor." [R. 213]. Although the plaintiff was taking Xanax three times a day, Dr. Halsey said that it "does not completely control the tremor." [Id.].

On November 16, 2007, the plaintiff was evaluated by Gurpreet Singh Ahluwalia, M.D., at Calhoun-Cleburne Mental Health Board, Inc. ("CCMH"). Dr. Ahluwalia, a psychiatrist, diagnosed Major Depressive Disorder, recurrent, severe with psychotic features, and assessed her GAF at $40^2$. [R. 193]. Although Dr. Ahluwalia is the plaintiff's treating psychiatrist, the ALJ did not give his opinion significant weight because "it represents only a two month period [and] is not supported by medical evidence in the file." [R. 21]. Despite Dr. Ahluwalia's opinion, the ALJ found the

---

$^2$ The Global Assessment of Functioning (GAF) Scale is used to report an individual's overall level of functioning. Diagnostic and Statistical Manual of Mental Disorders 32 (4th Edition, Text Revision) ("DSM-IV-TR"). A rating of 31-40 reflects: "**Some impairment in reality testing or communication** (e.g., speech is at times illogical, obscure, or irrelevant) **OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood** (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." DSM-IV-TR at 34 (emphasis in original).

plaintiff had "no more than mild to moderate anxiety and depression." [R. 18]. This finding is not supported by substantial evidence.

At the hearing, the ALJ was informed that the plaintiff was continuing treatment at CCMH and the ALJ held the record open an additional 30 days for submission of additional evidence. [R. 251]. On March 26, 2008, within the 30-day submission period, the plaintiff's attorney advised the ALJ that the plaintiff was scheduled to see her therapist again on April 30, and had an appointment on May 29, 2008, with her treating psychiatrist, Dr. Ahluwalia. [R. 223]. The plaintiff's attorney requested additional time to submit these records, but received no response from the ALJ. Indeed, the plaintiff was seen by Dr. Ahluwalia on May 29, 2008, and was again diagnosed with Major Depressive Disorder, recurrent, severe with psychotic features. [R. 233]. Again, Dr. Ahluwalia assessed the plaintiff's GAF at 40. [Id.].

In his decision, the ALJ mentioned the plaintiff's treatment by Drs. Torabi and Halsey, but failed to state what weight he gave their findings. [R. 19]. Instead, he found that the plaintiff's "testimony is not consistent with the medical evidence or with the opinions of the medical treating and consulting sources." [R. 20]. The ALJ's statement that "[r]epeated examinations found no evidence to support the claimant's allegations of pain or chronic headaches" is simply not supported by the record. [Id.]. As Judge Allgood observed in Lamb v. Bowen: "[T]he record is replete with evidence of a medical condition that could reasonably be expected to produce the alleged pain. No

examining physician ever questioned the existence of appellant's pain.  They simply found themselves unable to cure the pain." 847 F.2d 698 (11th Cir. 1988).

As a treating psychiatrist, Dr. Ahluwalia's opinion should be given controlling weight unless good cause is shown to the contrary.  Dr. Ahluwalia consistently assessed the plaintiff's GAF at 40, which is indicative of major impairments in her social and occupational functioning.  This assessment is also entirely consistent with both the testimony of the plaintiff, and the lay testimony of her mother.  Because the ALJ's reason for rejecting the testimony of Dr. Ahluwalia is not supported by substantial evidence, as a matter of law, his testimony must be accepted as true.  Because the plaintiff has demonstrated at least four of the nine characteristics[3] of Depressive Syndrome, she meets Part A of Listing 12.04.  The plaintiff has shown marked restrictions[4] in two of the four Part B criteria of Listing 12.04.  Therefore, she is disabled within the meaning of the Social Security Act.

Although reversal of this case is warranted, remand would also be proper because of the existence of this new and material evidence.  The plaintiff submitted Dr. Ahluwalia's report to the Appeals Council, which issued a boilerplate denial.  Plaintiff's

---

[3] Anhedonia or pervasive loss of interest in almost all activities [R. 232]; appetite disturbance with change in weight [R. 129, 136, and 211]; sleep disturbance [R. 132, 136, 199, and 211]; psychomotor agitation or retardation [R. 129, 130, 132, 134, and 148]; decreased energy [R. 132, 138, 194, and 232]; feelings of guilt or worthlessness [R. 197, 201, and 232]; difficulty concentrating or thinking [R. 134, 200, 209, and 232]; and hallucinations, delusions, or paranoid thinking [R. 194, 229, 232, 235, and 242].

[4] Activities of daily living and maintaining social functioning [R. 190-206; 224-246].

attorney has requested in the alternative that this action be remanded for proper consideration of that evidence.  "[W]hen a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether the new evidence renders the denial of benefits erroneous." Ingram at 1262.  The Appeals Council committed reversible error in failing to either review the plaintiff's case or to remand it for further proceedings.

## CONCLUSION

This is a case where "the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt." Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).  In such a case the action should be reversed and remanded with instructions that the plaintiff be awarded the benefits claimed. Id.  An appropriate order remanding the action with instructions that the plaintiff be awarded the benefits claimed will be entered contemporaneously herewith.

DONE and ORDERED 8 December 2009.

UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.